## In re Luis A. Maldonado Soto, Respondent.

No. 106.    Decided September 13, 1961.

*Luis A. Maldonado Soto,* pro se; *Félix Ochoteco, Jr., Ernesto Juan Fonfrías, Benjamín Ortiz,* and *Mario A. Rodríguez* for respondent. *J. B. Fernández Badillo, Attorney General,* and *Rodolfo Cruz Contreras, Assistant Attorney General,* for the People.

Per Curiam.

On December 13, 1960, the Attorney General of Puerto Rico, in compliance with an order of this Court of the 18th day of the former month, filed a complaint against Luis A. Maldonado Soto, attorney-at-law, charging him with immoral and improper conduct, contrary to professional ethics, consisting of the following two counts:

1. "The respondent, Luis A. Maldonado Soto, was guilty of immoral and improper conduct in that on August 17, 1960 he defrauded his client Juan Paz Tañón, by appropriating the sum of seven thousand dollars ($7,000) entrusted him by the latter

for the purpose of depositing in civil action for Accession No. 10-1702, Juan Paz Tañón v. Juan Santos, before the Superior Court of Puerto Rico, Caguas Part. The aforesaid sum of seven thousand dollars was contained in check No. 08966, issued by the United Federal Savings and Loan Association of Puerto Rico in favor of Juan Santos, which check respondent deposited in a personal account that he opened in the Fist National City Bank of New York, Bayamón Branch and from which he withdrew on different dates, using the money so obtained for his own benefit.

2. "Respondent Luis A. Maldonado Soto, betraying the confidence deposited in him by his client, Juan Paz Tañón, and ignoring the high duties that as attorney-at-law he has contracted with the community, was guilty of immoral and improper conduct on August 17, 1960, when acting with the intention of defrauding his aforesaid client, Juan Paz Tañón, he forged the signature of Juan Santos in check No. 08966, issued in the latter's name on said date by the United Federal Savings and Loan Association of Puerto Rico."

Respondent answered the complaint accepting part of the facts alleged and presented certain special defenses. The pertinent part of his answer reads as follows:

"Respondent admits that on August 17, 1960 he received $7,000 from Juan Paz Tañón, but denies that he received said amount from Juan Paz Tañón in order to deposit it for the suit referred to in the first count but to obtain a farm owned by Juan Santos on behalf of said Juan Paz Tañón and for the latter's and respondent's benefit and within the business relations that both maintained and maintain and to which he shall refer hereinafter, thus respondent accepting also that he deposited said $7,000 in an account which he opened in his name at The First National City Bank of New York in Bayamón, Puerto Rico; but denies that he withdrew said funds for his own benefit but rather for the benefit of Juan Paz Tañón as well as respondent's in the ordinary course of the business relations existing between them.

"BY WAY OF DEFENSE RESPONDENT ALLEGES:

"The respondent and Mr. Juan Paz Tañón for a period of three or more years were engaged in common businesses, fi-

nanced by the said Juan Paz Tañón, who placed funds at the disposal of respondent to be invested by him at his own discretion and the benefits to be distributed between both as partners, in equal shares between the partners; respondent alleges that even after the filing of the complaint in the above-entitled case, the business relations between respondent and Juan Paz Tañón have continued as well as the attorney-client relations and friendly relations.

"Respondent also alleges that the money referred to in the above-entitled complaint and which it is alleged respondent appropriated, is at present in possession of said Juan Paz Tañón, who for reasons of the ordinary course of the business between respondent and said Juan Paz Tañón, has invested them in properties in which respondent has financial interests.

## "Answer to the Second Count

"Respondent admits that he indorsed the check mentioned in the second count but denies that in so doing he intended to defraud Juan Paz Tañón and on the other hand alleges that he did not commit fraud of any sort at any time against the aforesaid Juan Paz Tañón as to said sum of $7,000 or any other amount, and although respondent acknowledges that by indorsing the check he was acting in an irregular manner at no moment did he have the intention to defraud as he did not defraud, Juan Paz Tañón, respondent alleging that the cashing of the check, notwithstanding the aforementioned irregularity, was explainable and excusable conduct because of the manner in which respondent and said Juan Paz Tañón carried on their business relations.

"Thus respondent also alleges that he reproduces everything that he alleges in his answer to the first charge concerning the business relations carried to that effect and which are still maintained between respondent and Juan Paz Tañón, thus alleging also that said Juan Paz Tañón had knowledge and had authorized respondent to deposit in the latter's name any amount of money which he might deliver to respondent for the purpose of investing it and in order that the latter could dispose of the same at his sole discretion and that the investments to be made appear in the name of the respondent."

■■ Angel Umpierre, Judge of the Superior Court of Puerto Rico, was designated to hear the evidence and after the corresponding hearing, he set forth his findings of fact in a report [1] dated last August 17, which literally copied states:

"On August 19, 1960, respondent Luis A. Maldonado Soto, as counsel for plaintiff Juan Paz Tañón filed a complaint in an action to enforce the right of accession in the office of the clerk of the Superior Court, Caguas Part, against Juan Santos in which it is alleged that plaintiff is the owner of a house valued at $5,000, constructed in a farm of 23 cuerdas valued at $7,000, property of the defendant and that plaintiff is willing to deposit in due time before the court the aforesaid amount of $7,000 for the benefit of defendant and request that defendant be ordered to transfer the parcel of land where plaintiff's house is located or to order, the sale of the property upon payment of its fair value.

"On August 17, 1960, Juan Paz Tañón withdrew $7,000 from the 'First Federal Savings and Loan Association' Bank instructing the bank to make a check for that amount payable to Juan Santos and respondent received said check and signed the following receipt:

'I received from Juan Paz Tañón, check No. 08966 from the United Federal Savings Bank and Loan Association for the sum of $7,000 to be delivered and deposited in due time in the office of the clerk of the Superior Court, Caguas Part, with relation to a case of accession.

'At Bayamón, Puerto Rico, August 17, 1960.

'(sgd.) Luis A. Maldonado Soto

'(Petitioner's Exhibit 10.)'

"Respondent without the permission, knowledge or consent of Juan Paz Tañón nor Juan Santos, made the indorsement with the name of Juan Santos and on the same day, August 17, 1960, two days before the filing of the case of Accession, opened a current account in the First National City Bank of New York, Bayamón Branch, depositing said check No. 08966.

---

[1] Respondent objected to the last finding of fact set forth by the Master but since it is unnecessary to consider the same for disposing of the matter, we have omitted it from the present recital. It is not necessary, then, that we make a specific ruling as to the objection referred to.

After making this initial deposit of $7,000 respondent made several deposits for $1,405 and withdrew the sum of $8,389.22 by means of checks there remaining a balance of $15.08 in said account on September 22, 1960. Of the 51 checks that respondent issued chargeable to that account none of them is in favor of neither Juan Paz Tañón nor of Juan Santos.

"The parties accepted the authenticity of Record No. 60–1707 on Accession, Exhibit 1 and that in that case no amount whatsoever was at any time deposited at the clerk's office at the court.

"Juan Paz Tañón delivered the check to respondent when the latter informed him that he needed it because the case was ready to be taken to court.

"Sisters and relatives of respondent have guaranteed the sum of $7,000 amount of the above-mentioned check, by mortgaging their properties in favor of Juan Paz Tañón.

"When respondent filed the action to enforce the right to Accession he knew that the same did not lie; when he requested and received the sum of $7,000 he knew there was no need to make the deposit in court; when he opened the current account with the $7,000 he did so without the knowledge or consent of the parties in the case for Accession; when he withdrew from the account, Juan Paz Tañón did not know the use that was being given to the money."

We have carefully examined the evidence presented before the Master and the findings of fact are amply justified. In truth, respondent practically admitted that he had violated the rules of ethics that should always govern the conduct of a lawyer.[2] Apparently respondent's uncontrollable ambition for speedy economic success clouded his understanding and

---

[2] From respondent's examination we copy (Tr. Ev. 58):

"Q. Tell me, as a lawyer do you acknowledge for present purposes that you violated the professional ethics by depositing the amount of that check of $7,000 in your account, when the ethical plans (sic) state that the client's money received by an attorney should be duly identified at every moment and not commingled with the lawyer's funds?

"A. I admit it, but we, that is, I did not deposit that money in the bank as I did not deposit large amounts of any of my clients in the capacity of clients..."

deprived him of proper reasoning to govern his professional activity within the frame of the most pure honesty. The violations proved are truly serious and constitute a clear violation of Canons 11 and 30 of Professional Ethics, 48 P.R.R. XIV and XXII (1935).[3]  *In re Guzmán*, 82 P.R.R. 229, 234 (1961); *In re Navarro*, 78 P.R.R. 349 (1955); *In re Ruiz de Val*, 43 P.R.R. 252 (1932).

Respondent Luis A. Maldonado Soto will be disbarred from the office of attorney and his name will be stricken from the roll of attorneys of this Court.

---

[3] The canons cited read as follows:

"11. *Dealing With Trust Property.*  Money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and except with the client's knowledge and consent should not be commingled with his private property or be used by him."

"30. *Justifiable and Unjustifiable Litigations.*  The lawyer must decline to conduct a civil cause or to make a defense when convinced that it is intended merely to harass or to injure the opposite party or to work oppression or wrong.  But otherwise it is his right and having accepted retainer, it becomes his duty to insist upon the judgment of the Court as to the legal merits of his client's claim.  His appearance in Court should be deemed equivalent to an assertion on his honor that in his opinion his client's case is one proper for judicial determination."